

**IN THE GRAND COURT OF THE CAYMAN ISLANDS**
**FINANCIAL SERVICES DIVISION**

                                                    **CAUSE NO. FSD 235 of 2022 (CRJ)**

**IN THE MATTER SECTION 46 OF THE COMPANIES ACT (2022 REVISION)**

**BETWEEN:**

                        **(1)  KOA CAPITAL L.P.**

                        **(2)  507 SUMMIT LLC**

                                                              **PLAINTIFFS**
                        **AND**

              **CHINA INDEX HOLDINGS LIMITED**

                                                              **DEFENDANT**

| | |
|---|---|
| **Appearances:** | **Mr. Matthew Dors and Mr. Mark Burrows of Collas Crill for the Plaintiffs** |
| | **Mr. Quentin Cregan and Ms. Tiana Ritchie of Maples and Calder for the Defendant** |
| **Before:** | **The Hon. Justice Cheryll Richards K.C.** |
| **Heard:** | **14th December 2022** |
| **Draft Judgment:** | **14th April 2023** |

### _**HEADNOTE**_

_Civil Procedure, Grand Court Rules O.62 r.4, Indemnity Costs, Applicable Principles._

---

### JUDGMENT

1.   This is an application for indemnity costs by the two Plaintiffs, Koa Capital L.P. and 507 Summit LLC, ("Koa Capital" and "507 Summit"). The substantive issues between the parties have been resolved. The only remaining issue is a narrow one. The Defendant, China Index Holdings Limited ("CIHL"), has offered to pay the costs of the Plaintiffs on the standard basis. The Plaintiffs argue that this is one of those exceptional cases in which the Defendant should pay costs on an indemnity basis.

2.   Koa Capital is a limited partnership organised under the laws of Delaware. It operates as an investment fund which invests in financial instruments. 507 Summit is a limited liability company organised under the laws of Delaware. It invests in financial instruments. The Defendant is an exempt company which is incorporated and registered in the Cayman Islands. It operates a real estate analysis service platform in the People's Republic of China. Since 2018 its American Depository Shares (ADSs) are listed on the Nasdaq Global Select Market.  Such shares are held under the American Depository Receipt ("ADR") system which utilises a third-party custodian or depository.  The Plaintiffs were the holders of ADSs in the Defendant. The ADSs were registered in the name of and held by JP Morgan Chase Bank ("JPM") as third-party Depository or Custodian. The Deposit Agreement gives the holder of ADSs the right to surrender its ADSs and to have them converted to Class A ordinary shares in the Defendant. Conversion would require transfer of the underlying shares from JPM to direct registration in the names of the Plaintiffs who would then become shareholders of the Defendant.

3.   On various dates in the second half of 2022, the Plaintiffs sought the conversion of their ADSs and registration as shareholders in the Defendant. A number of steps were required to give effect to the withdrawal and cancellation of the ADSs held by the Depository and the subsequent transfer of the underlying Class A shares from the Depository into the names of the Plaintiffs. The last step required for the registration of the shares to be effected is the issue of a letter of confirmation/instruction by the Defendant to its Registered Office, Maples Fund Services Cayman ("Maples FS").  It is the failure of the Defendant to issue these letters which gave rise to the substantive matter before the Court.

4.     By Originating Summons dated 25th October 2022, the Plaintiffs sought the rectification of the register of members of the Defendant pursuant to s.46 of the **Companies Act** (2022 Revision) and the issue of share certificates within three business days thereafter. Koa Capital sought rectification to include it as the holder of 1,682,400 Class A Ordinary Shares. The Second Plaintiff, 507 Summit sought rectification to include it as the holder of 851,000 Class A Ordinary Shares. The Summons also sought the abridgement of time for the filing of the Defendant's response because of the time sensitive nature of the relief sought. The Plaintiffs alleged that the Defendant was frustrating the registration process in circumstances where there was a possible private takeover bid and merger in respect of which they could have no say unless they were registered as ordinary shareholders.

5.     On the 2nd November 2022, an Order granting abridgement of time was made. The Application for Rectification was listed for hearing on the 9th November 2022. Time to file was abridged to the 7th November 2022.

6.     On the 7th November 2022, the Defendant filed an Acknowledgment of Service indicating an intention to defend.  The Defendant thereafter sought an adjournment of the hearing on the basis that there was insufficient time for it to prepare evidence in reply. A Consent Order was agreed between the parties which was confirmed by the Court on the 9th November 2022. By this Order, upon the Defendant giving certain undertakings, the hearing of the 9th November 2022 was vacated. The Defendant was given extended time to file evidence to the 2nd December 2022 at 5:00pm.

7.     The undertakings given included that the Defendant would not give any plan of merger to its members or call an extraordinary general meeting to consider a resolution to approve a merger before the 6th January 2023 or the Court's determination of the relief sought in the Originating Summons. The Defendant also undertook to provide the Plaintiffs with at least 21 days' notice before presenting any plan of merger to its members.

8.     On the 5th December 2022, Counsel for the Defendant advised the Plaintiffs that the Defendant did not intend to file any evidence and that it agreed to take the necessary steps to register the shares. Registration would be done on or before the 6th January 2023.  The Plaintiffs responded objecting to any further delay and asked that given the end of year audit for their financial

*230420 KOA Capital L.P. & 507 Summit LLC v China Index Holdings Limited (CRJ) – FSD 235 of 2022 - Judgment*

Page **3** of 27

records, the registration be completed. They indicated that they would seek the relisting of the Summons if the Shares were not registered by 5:00pm on Wednesday 7th December 2023.

9.      In reply, Counsel for the Defendant indicated that further time was required because of the practical difficulties in obtaining signed approval when all persons who could provide this were under lockdown in China due to the Covid-19 virus. Counsel said that the 6th January 2023 was a more realistic timeframe considering these difficulties.  The Plaintiffs disagreed and noted that all that remained was a simple step, the completion of a pro forma letter of instruction which could be completed by email.

10.     The Plaintiffs wrote to the Court on the 8th December 2022 seeking the re-listing of the matter before the Christmas break. The matter was relisted for hearing on the 14th December 2022. Two days before the hearing on the 12th December 2022, the shares were registered by the Defendant and on the day before the hearing the Defendant provided the share certificates to the Plaintiffs.

11.     The Plaintiffs argue that the Defendant's conduct before the Summons was filed and during the process was improper and highly unreasonable and makes it a case outside of the norm. It is said that an exercise of the Court's discretion to order indemnity costs would in these circumstances support the Overriding Objective. The Defendant argues that it has not acted improperly or unreasonably and that its conduct does not meet the high threshold for indemnity costs.

**THE GRAND COURT RULES**

12.     The **Grand Court Rules** ("GCR") O. 62 r.4 deals with costs in general and provides a discretion for the Court to order indemnity costs if it is satisfied that the paying party has conducted the proceedings, or that part of the proceedings to which the order relates, improperly, unreasonably, or negligently.  It states in part:-

> "*General principles (O.62, r.4) 4.*
>
> *(1) This rule shall have effect unless otherwise provided by any Law.*
>
> *(2) The overriding objective of this Order is that a successful party to any proceeding should recover from the opposing party the reasonable costs incurred by successful party*

*in conducting that proceeding in an economical, expeditious and proper manner unless otherwise ordered by the Court.*

*...*

*(5) If the Court in the exercise of its discretion sees fit to make any order as to the costs of any proceedings, the Court shall order the costs to follow the event, except when it appears to the Court that in the circumstances of the case some other order should be made as to the whole or any part of the costs.*

*(6) The amount of the costs which a successful party shall be entitled to recover from any other party is –*

*(a) the fixed costs prescribed in rule 7;*

*(b) the amount assessed by the Judge in accordance with rule 8;*

*(c) the amount allowed after taxation on the standard basis; or*

*(d) the amount allowed after taxation on the indemnity basis.*

*...*

*(11) The Court may make an inter partes order for costs to be taxed on the indemnity basis only if it is satisfied that the paying party has conducted the proceedings, or that part of the proceedings to which the order relates, improperly, unreasonably or negligently."*

## GENERAL PRINCIPLES

13.  General principles with respect to the application of the Rules are set out in a number of cases which have been helpfully drawn to the Court's attention by both Counsel.

14.  In ***Ahmad Hamad Algosaibi and Brothers Company v. Saad Investments Company Limited and Forty-Three Others***[1], Smellie CJ provided guidance on what is described as the wide and flexible jurisdiction under GCR O.62 to grant costs on an indemnity basis. The jurisdiction allows the court to exercise its discretion as required by the particular circumstances of each case. The overriding principle to be applied is that such awards of costs will be the exception rather than the norm. In exceptional cases, the conduct of the unsuccessful party justifies requiring it to repay all the costs actually incurred by the successful party.

[1] [2012] 2 CILR 1

15.   The learned Chief Justice reviewed the judgments in several cases including ***Kiam v. MGN (No. 2)*** [2] wherein it was stated that the focus is on the conduct of the losing party:-

> "*Thus, when considering an application for the award of costs on the indemnity basis, the court is concerned principally with the losing party's conduct of the case, rather than the substantive merits of his position.*"

16.   The approach taken in the cases reviewed by the learned Chief Justice may be summarised as follows. Indemnity costs will be awarded where:

   a)   There is something in the conduct or circumstances to take the case outside the norm[3].

   b)   There is some element of a party's conduct of a case which deserves some mark of disapproval. Advancing a case which is unlikely to succeed, or which fails is insufficient to justify an award of indemnity costs[4].

   c)   If the conduct falls short of moral condemnation, it would need to be unreasonable to a high degree to justify an award of indemnity costs. Unreasonable in this context does not mean wrong or misguided in hindsight[5].

   d)   One example of improper and unreasonable conduct which would justify an award of indemnity costs would be to pursue a speculative or weak case with the intention to embarrass the opposite party[6].

17.   In ***Ritter v. Butterfield Bank***[7], Williams J. noted that the Court's discretion is to be exercised judicially in light of the facts of the case. Something special or unusual must be demonstrated. This would include where a losing party has misconducted himself in relation to the case. The plaintiffs in that case had improperly pursued serious allegations of dishonesty for an extended period. This despite the fact that they had been made aware of the potential negative cost implications and thus the high risk of an award of indemnity costs against them.

---

[2] [2002] 2 All E.R. 242
[3] Excelsior Comm. & Indus Holdings Ltd. v. Salisbury Hammer Aspden & Johnson [2002] C.P. Rep.67
[4] Simms v. Law Society [2006] Costs L.R. 245
[5] Kiam v. MGN (No. 2)
[6] Paragraph 15, Ahmad Hamad Algosaibi and Brothers Company v. Saad Investments Company Limited and Forty-Three Others [2012] 2 CILR 1
[7] [2018] (2) CILR 638

*230420 KOA Capital L.P. & 507 Summit LLC v China Index Holdings Limited (CRJ) – FSD 235 of 2022 - Judgment*

18.     The learned Judge stated:-

*"39   The award of costs on the indemnity basis is often seen in cases where the court wishes to indicate its disapproval of the conduct of the paying party. In the words of 10 Halsbury's Laws, 4th ed., para. 22, at 22, n.8 (2007):*

*"Indemnity costs may be awarded against the party whose conduct has been unreasonable, even though the conduct could not properly be regarded as lacking moral probity or deserving moral condemnation: Reid Minty (a firm) v Taylor [2001] EWCA Civ 1723."*

19.     In **Al Sadik v Investcorp Bank BSC**[8] Jones J., granted the Defendant's application for indemnity costs in respect of one aspect of the proceedings only. This related to a false claim which took up time and to which resources had to be devoted. The learned Judge said:-

*"14   In my judgment, a proceeding, or some identifiable part of it, can only be said to have been conducted "improperly" within the meaning of r.4(11) if the court is satisfied, in all the circumstances of the case, that a party has invoked the court's jurisdiction illegitimately or abused the process in a way which attracts moral condemnation. A party who asserts a cause of action when he knows that he has no legitimate basis for doing so is acting improperly. Pursuing an action for some ulterior motive is an abuse of the process which may be categorized as improper.*

*...*

*17.   In this respect, I conclude that Mr. Al Sadik's case was conducted improperly and unreasonably within the meaning of r.4(11). Since this false claim constituted a significant part of the case, to which a huge amount of time, effort and money was devoted, I have come to the conclusion that I should express the court's disapproval by making an order for indemnity costs in respect of the first claim (breach of collateral contract)."*

---

[8] [2012] 2 CILR 33

---

*230420 KOA Capital L.P. & 507 Summit LLC v China Index Holdings Limited (CRJ) – FSD 235 of 2022 - Judgment*

Page **7** of **27**

20.     In ***Bennett v. the Attorney General***[9] the Grand Court declined to award indemnity costs to the Plaintiff. The Court distinguished between bringing a weak claim or defence which would not attract indemnity costs and bringing a hopeless claim which would. It was held:-

> *"Although a party's pursuit of a hopeless claim or maintaining of a hopeless defence would justify an order of indemnity costs against it, proceeding with a merely weak claim or defence would not. It would be reasonable for a party with a merely weak claim or defence to seek the court's determination of the issue, and an award of indemnity costs—which were penal in nature—would therefore be inappropriate. Moreover, the court needed to avoid the use of hindsight. The question would be whether it was reasonable to proceed with the claim or defence based on the facts as they should have appeared to the party at the time. Since the respondent would not have understood the defence to be hopeless - indeed, the plaintiff's attorney had estimated his chance of success at 50% - the plaintiff would only be awarded his costs on the standard basis. "*

21.     In ***Talent Business Investments Limited v. China Yinmore Sugar Company Limited***[10], Smellie CJ noted that while the jurisdiction to award indemnity costs in England is wider than the Cayman Islands, some English authorities are still of assistance. The learned Chief Justice cited with approval the case of ***Three Rivers D.C. v. Bank of England***[11] and the summary principles set out therein:-

> *"41   Whilst the jurisdiction to award indemnity costs in England is thought to be somewhat wider than that in the Cayman Islands, some of the leading English authorities nevertheless remain of assistance. In Three Rivers D.C. v. Bank of England (9), Tomlinson, J. summarized ([2006] 5 Costs L.R. 714, at para. 25) the principles upon which the court should determine any question of indemnity costs, elaborating upon the test of unreasonableness as follows:-*
>
> > *"(1) The court should have regard to all the circumstances of the case and the discretion to award indemnity costs is extremely wide.*

---

[9] [2010] 1 CILR 478
[10] [2015] (2) CILR 113
[11] [2006] 5 Costs L.R.714

*230420 KOA Capital L.P. & 507 Summit LLC v China Index Holdings Limited (CRJ) – FSD 235 of 2022 - Judgment*

Page **8** of **27**

*(2) The critical requirement before an indemnity order can be made in the successful [party's] favour is that there must be some conduct or some circumstance which takes the case out of the norm.*

*(3) Insofar as the conduct of the unsuccessful claimant is relied on as a ground for ordering indemnity costs, the test is not conduct attracting moral condemnation, which is an a fortiori ground, but rather unreasonableness.*

*(4) The court can and should have regard to the conduct of an unsuccessful claimant during the proceedings, both before and during the trial, as well as whether it was reasonable for the claimant to raise and pursue particular allegations and the manner in which the claimant pursued its case and its allegations.*

*(5) Where a claim is speculative, weak, opportunistic or thin, a claimant who chooses to pursue it is taking a high risk and can expect to pay indemnity costs if it fails.*

*(6) A fortiori, where the claim includes allegations of dishonesty, let alone allegations of conduct meriting an award to the claimant of exemplary damages, and those allegations are pursued aggressively inter alia by hostile cross examination.*

*(7) Where the unsuccessful allegations are the subject of extensive publicity, especially where it has been courted by the unsuccessful claimant, that is a further ground.*

*(8) The following circumstances take a case out of the norm and justify an order for indemnity costs, particularly when taken in combination with the fact that a defendant has discontinued only at a very late stage in proceedings;*

---

*230420 KOA Capital L.P. & 507 Summit LLC v China Index Holdings Limited (CRJ) – FSD 235 of 2022 - Judgment*

Page **9** of 27

*(a) Where the claimant advances and aggressively pursues serious and wide ranging allegations of dishonesty or impropriety over an extended period of time;*

*(b) Where the claimant advances and aggressively pursues such allegations, despite the lack of any foundation in the documentary evidence for those allegations, and maintains the allegations, without apology, to the bitter end;*

*(c) Where the claimant actively seeks to court publicity for its serious allegations both before and during the trial in the international, national and local media;*

*(d) Where the claimant, by its conduct, turns a case into an unprecedented factual enquiry by the pursuit of an unjustified case;*

*(e) Where the claimant pursues a claim which is, to put it most charitably, thin and, in some respects, far-fetched;*

*(f) Where the claimant pursues a claim which is irreconcilable with the contemporaneous documents;*

*(g) Where a claimant commences and pursues large-scale and expensive litigation in circumstances calculated to exert commercial pressure on a defendant, and during the course of the trial of the action, the claimant resorts to advancing a constantly changing case in order to justify the allegations which it has made, only then to suffer a resounding defeat."*
*[Emphasis supplied.]"*

22.    In **Nike Real Estate Limited v. De Bruyne**[12] the Grand Court (Kellock J,) awarded indemnity costs in circumstances where the Court found that there had been an abuse of the Court's process. It was said that the conduct of a party who urged the Court to accept as true a case in which it had no genuine belief would amount to an abuse of the Court.

---

[12] [2002] CILR 31

*230420 KOA Capital L.P. & 507 Summit LLC v China Index Holdings Limited (CRJ) – FSD 235 of 2022 - Judgment*

Page **10** of 27

FACTUAL SUMMARY

23.   With these principles and approach in mind, I turn to consider the conduct of the Defendant in this case. Each party relies in large measure on the background detail and the dates of certain events. It is therefore necessary to set these out in some detail.

24.   The Originating Summons is supported by the First Affidavit of Henry Patner dated 25th October 2022. Mr. Patner is the Chief Executive Officer of Koa Capital. At the time of the application Koa Capital was the beneficial owner of 1,682,400 ADSs representing Class A Ordinary Shares of the Defendant in a similar amount. Mr. Patner attests that Koa Capital had been attempting to exercise its conversion rights since 13th July 2022 but had been unable to do so because although all other necessary steps had been completed, the Defendant had not taken the final step of giving instructions to Maples FS to complete the transfer by updating the Register.

25.   Although Koa Capital had started the process for conversion in July, the reason for urgency emerged in August 2022 when there was an announcement by the Defendant that it had received an offer from a consortium of buyers which if completed could lead to the compulsory acquisition of Koa Capital's shares in the Defendant and the privatisation of the Defendant.

26.   There was some uncertainty as to how the transaction would be structured and whether this was to be by way of some form of merger. If this was to be by way of a short-term or expedited merger this could be completed without the convening of an extraordinary meeting of shareholders. Koa Capital considered that it was crucial that it had the rights of a registered shareholder as soon as possible in order to be able to exercise rights of dissent should it wish to do so.

27.   The lead company in the consortium was Fang Holdings Ltd. ("Fang"). Fang is registered in the Cayman Islands.  Koa Capital held ADSs in both the Defendant and Fang. According to Mr. Patner, the Defendant and Fang are related entities. The Defendant was initially incorporated in 2007 in the British Virgin Islands under the name Selovo Investments Limited as a wholly owned subsidiary of Fang. The Defendant changed its domicile to the Cayman Islands in 2018 and also changed its name. Mr. Patner refers to open source information which

indicates that the Board of Directors of both Fang and the Defendant are chaired by the same person, Richard Jiangong Dai. Ms. Jessie Yang is the Investor Relations Director for both entities. Ms. Yang and Mr. Peng Cui, the Chief Financial Officer of Fang, were the contacts for both companies in relation to the share conversion requests and arrangements.

28.   The sequence of events as evidenced and relied on by the Plaintiffs begins with an email of the 13th July 2022 produced by Mr. Patner by which Koa Capital informed JPM of its desire to convert its ADSs in the Defendant and in Fang. Counsel for the Defendant is critical of the reliance on this date as a start date and describes this email as no more than a generic one.

29.   On the 21st July 2022 Koa Capital advised the Defendant through its registered office of its intention to exercise its right of conversion. Confirmation was sought that the Defendant would take all necessary steps to complete the registration of its shares upon cancellation of the ADSs. A similar letter was sent to Fang.

30.   On the 2nd August 2022 Koa Capital's attorneys wrote to the Defendant and to Fang. The letters advised that as a preliminary step JPM required confirmation that it would effect the registration of the underlying shares following cancellation. The letter referred to previous proceedings in FSD 162/2020 (ASCJ) against the Defendant for failing to complete the conversion and transfer of shares.

31.   On the 5th August 2022, the attorneys on behalf the Defendant (Conyers Dill and Pearman) responded and advised that the required confirmation letter would be issued subject to any unusual circumstances. I consider that this letter is important in the context of the position later taken by the Defendant in relation to these proceedings.  The letter stated *inter alia:-*

> *"Our client respects the rights of its shareholders and will provide the necessary assistance to the exercise of their rights.  Following the matter FSD 162 of 2020 (ASCJ), our client strengthened its management of requests for conversion and transfer of shares, and have thereafter completed a number of such requests following the procedures below:*
>
> *...*
>
> *As is apparent from the procedures above, it is important that Maples is involved in the process, as it is responsible for collating and verifying the details of the ADS shareholder*

---

*230420 KOA Capital L.P. & 507 Summit LLC v China Index Holdings Limited (CRJ) – FSD 235 of 2022 - Judgment*

*and or updating the register of members.  The Company has not received any Confirmation Letter from Maples and therefore has not provided the confirmation that your client requested. Our client suggests that your client initiate the contact with Maples to progress the conversion request. Maples' contact person is …*

*"Following its usual procedures, the Company will issue the Confirmation Letter prepared by Maples, subject to any unusual circumstances.  Based on the available information, the Company is not aware of any unusual circumstances."*

32.    On the 23rd August 2022 Fang announced a proposal to acquire in a private transaction the shares in the Defendant including those represented by ADSs not currently owned by the Company.

33.    On the 29th August 2022, the Defendant was provided with a template confirmation letter by Maples FS.

34.    On the 31st August 2022 the conversion and transfer of the shares held in Fang was completed and the shares were recorded in the name of Koa Capital on Fang's register of members. The confirmation letter from Fang had been provided on the 19th August 2022.

35.    On the 31st August 2022 Koa Capital was advised by Maples FS that the outstanding item with respect to the ADSs was the instruction letter from the Defendant.

36.    On the 9th September 2022, Koa Capital provided the required instrument of transfer ("IOT") to JPM.

37.    On 12th September 2022 there was confirmation from Maples FS that the IOT and share certificate had been received from JPM and all that was awaited was the letter of instruction from the Defendant.

38.    By the 19th September 2022, Mr. Patner on behalf of Koa Capital had made five requests of the Defendant for this letter. On the 26th September 2022, Koa Capital's attorneys issued a letter before action which was sent to the attorneys for the Defendant.

---

*230420 KOA Capital L.P. & 507 Summit LLC v China Index Holdings Limited (CRJ) – FSD 235 of 2022 - Judgment*

39.    On the 28th September 2022, Ms. Yang responded on behalf of the Defendant to ask for a reason for the share conversion:-

> *"The Company was wondering if you can provide a reason behind the share conversion? It is pending approval by management and the Board."*

40.    This was the first communication from the Defendant to Koa Capital in over a month. Mr. Patner responded on the following day asserting that no reason was required to be given, this was the exercise of a right but nevertheless provided three reasons.

41.    On the 13th October 2022, the Defendant announced that Fang had formed a consortium with others to pursue the transaction and that the buyer group had submitted a revised offer. According to Mr. Patner, this made the need for registration even more urgent.

42.    A further letter before action was sent to the attorneys for the Defendant on the 16th October 2022. This letter stated in part:

> *" ...*
> *Our clients have taken all steps that you say are required of them to complete the conversion of 2, 420,497ADS into ordinary shares.*
>
> *"Our clients will bring this letter to the Court's attention on the question of costs and will seek repayment of all expenses on a full indemnity basis.  Please confirm whether you are instructed to accept service of the contemplated proceedings on behalf of CIHL."*

43.    There was no response from the Defendant to the two letters before action and no reasons given for the Defendant's continued failure to provide the confirmation letter.

44.    Mr. Patner states that as at the date of the Affidavit of 25th October 2022, more than ten requests had been made of the Defendant for the letter (including requests from Maples FS and their own attorneys). He states also that it is his understanding that share purchases by members of the buyers group are generally completed within two weeks.

---

45.     Kyle Cleeton is the Co-Chief Investment Officer of the Manager of 507 Summit. On the 6th September 2022, 507 Summit sought to exercise its right to covert 738,097 ADSs held in the Defendant through JPM. On the 12th September 2022, the Company wrote to the Defendant. On 13th September 2022, there was a response on behalf of the Defendant that no emails from 507 Summit had been received. As at 21st September 2022, the fully executed IOT had been completed and the only step which remained was the instruction letter from the Defendant. After further follow up there was an inquiry on the 8th October 2022 on behalf of the Defendant to ask for a reason for the conversion. It was said to be pending approval by management and the Board. There was no further response from the Defendant thereafter and no response to emails which had been sent since the 13th September 2022.

46.     On the 14th October 2022, 507 Summit sought to convert an additional 112,903 ADSs. The fully executed IOT for this was provided to the Defendant on the 18th October 2022.


**THE SUBMISSIONS**

47.     Against this factual background the Plaintiffs place significant reliance on what may be summarised as four main points:-

     i.      The extended timeframe which registration took by reference to time periods before and after the action was filed.

     ii.     The timeframe for registration by the Defendant compared to the timeframe for registering shares held by Koa Capital in Fang when the contact persons for both were the same.

     iii.    The non-responsiveness of the Defendant before the action and the failure to act promptly after the action was filed.

     iv.     The fact that previous actions in similar circumstances were brought against the Defendant and Fang and indemnity costs were awarded against Fang.

48.     The Defendant's response to these factual matters is in part that:-

     i.      By the Articles of Association, the Board of Directors of the Defendant has three months to consider requests for share transfers.

---

*230420 KOA Capital L.P. & 507 Summit LLC v China Index Holdings Limited (CRJ) – FSD 235 of 2022 - Judgment*

ii.   The timeframe was not that extensive. Before the action was filed, the Defendant could only have acted after all the other steps were completed and the penultimate step had only been completed weeks before, in one case only one week before the action was filed. After the action was filed, the shares were registered in only six weeks.

iii.  The Plaintiffs had been given a very broad undertaking which addressed their concerns. They would have sustained no prejudice in light of these undertakings. Any urgency thereafter was manufactured.

iv.   These are new proceedings which are entirely separate from the previous proceedings and Fang is a separate entity.

49.   Counsel on behalf of the Plaintiffs submitted that it is of significance that in 2020 there were similar proceedings brought by an unrelated entity against this Defendant for rectification of the share register in Cause FSD162 of 2020 and in Cause FSD161 of 2020 against Fang. The Final Order against this Defendant is not produced. The one in respect of Fang is produced. The Order required Fang to process and give effect to an instrument of transfer between JPM and the Plaintiffs and to issue a letter of instruction to the share registrar. Counsel noted that Fang's conduct and that of the Defendant was described by Smellie CJ as extraordinary conduct for a publicly listed company.

50.   Counsel said that this background history is relevant to the Court's assessment of the Defendants' conduct in these proceedings. This same defendant has had proceedings commenced against it for the same reason. It engaged in the same conduct beforehand. Additionally, while Fang is a different company this is not an unrelated matter given the clear association between Fang and the Defendant. They are run by the same people, who would have been well aware of the previous Court order and who could have been under no illusion as to how the Court is likely to deal with an application of this sort. They would know of the view that this Court is invited to take in respect of a refusal to act on shareholder rights and to register the shares and that indemnity costs is likely to follow.

51.     Counsel for the Defendant in reply on this point relied on the case of ***Sagicor General
        Insurance (Cayman) Limited v. Crawford Adjusters (Cayman) Limited***[13]. Counsel said that
        the conduct of the Defendant was in respect of an earlier action. This is a new matter, and the
        Defendant is entitled to be treated like any other litigant. Counsel said that at its highest the
        order made against the Defendant was in an unrelated matter some two years ago. Moreover
        there is insufficient material before the Court as to the details of those matters. Counsel also
        noted that there is a clear distinction between the case against Fang and the present case.  In
        contrast to the present case, the delay in registration of the shares by Fang was a period of a
        year. In addition, Fang did not contest the proceedings.

52.     I accept the submissions of the Defendant on this aspect in large measure.  While Counsel for
        the Plaintiffs argued that if indemnity costs were appropriate in the previous case, they must be
        appropriate now, it is the conduct of the Defendant in respect of this particular matter that
        requires to be considered. The Court should refrain from identifying points of similarity and
        reaching a conclusion on costs based on any such points.

53.     As to the processing time in this case, Counsel for the Plaintiffs noted that the conversion and
        registration of the shares in Fang which entity was not the subject of the private takeover bid
        was completed by the 23rd August 2022.  The process with the Defendant in respect of Koa
        Capital had begun at the very same time.

54.     Counsel pointed to the several follow-up emails and the absence of responses. Counsel said
        that by the time the proceedings were issued on the 25th October 2023 the Plaintiffs had no
        choice, they had been waiting for months and had received no responses to two letters before
        action.

55.     Counsel for the Defendant's broad point in response is that the urgency is manufactured.
        Counsel said that it is not correct that this is all outstanding since July 2022. By reference to
        the draft order for the rectification application, Counsel pointed out that the IOTs between the
        Plaintiffs and JPM, the necessary pre-conditions to completing transfers, were 9th September
        2022 for Koa Capital's shares, 20th September 2022 for 738,097 shares for 507 Summit and

---

[13] [2011] 2 CILR 471

18th October 2022 for the last set of shares. This was only one week before the proceedings were filed on the 25th of October 2022. Counsel noted that the Second Plaintiff began the process on the 6th September 2022.  The Summons was filed six and a half weeks after the second IOT was finalised and one week after the third. Moreover, the letters before action on 26th September and 16th October 2022 were written before the final transfers were in place. Counsel said that this is the outrageous conduct that the Defendant is said to have been engaged in.

56.    Counsel for the Defendants' main point as to timeframes is that the Board of Directors of the Defendant has a prescribed time period to consider transfers of shares.  This submission is based on Articles 44 and 46 of the Memorandum and Articles of Association of the Company. These state:-

> *"44. (a) The Directors may in their absolute discretion decline to register any transfer of Shares which is not fully paid up or on which the Company has a lien.*
>
> *(b) The Directors may also decline to register any transfer of any Share unless:*
>
> *(i)  the instrument of transfer is lodged with the Company; accompanied by the certificate for the Shares to which it relates and such other evidence as the Board may reasonably require to show the right of the transferor to make the transfer.*
>
> *(ii) the instrument of transfer is in respect of only one Class of Shares;*
>
> *(iii) the instrument of transfer is properly stamped, if required;*
>
> *(iv) in the case of a transfer to joint holders, the number of joint holders to whom the Share is to be transferred does not exceed four; and*

---

*230420 KOA Capital L.P. & 507 Summit LLC v China Index Holdings Limited (CRJ) – FSD 235 of 2022 - Judgment*

> *(v) a fee of such maximum sum as the Designated Stock Exchange may determine to be payable, or such lesser sum as the Board of Directors may from time to time require, is paid to the Company in respect thereof.*
>
> *...*
>
> 46. *All instruments of transfer that are registered shall be retained by the Company. If the Directors refuse to register a transfer of any Shares, they shall within three calendar months after the date on which the transfer was lodged with the Company send notice of the refusal to each of the transferor and the transferee."*

57.  Counsel said that the suggestion that all is required of the Company is an email is not correct. By Article 46, the Directors have three months if they are going to refuse a transfer. By Article 19 they have two months to provide a share certificate after a transfer. By Articles 43 and 44 the transfer must come before the Board. The Board has to consider whether the proposed transfer is appropriate, whether any of these provisions apply or whether there is a ground for refusal. Counsel said it would be a breach of the fiduciary obligations of the directors if they did not consider this. They have a discretion to consider each application against the criteria as set out therein. Upon review they can do one of three things, either say no basis to register or say basis to register or choose to refuse.

58.  Counsel for the Plaintiffs' reply appeared to be of some strength. It is firstly, that Article 44 sets out very limited circumstances in which the directors may decline to register shares. None of these apply in this case and they are not relevant to these circumstances. Thus, the time period in the Articles does not apply and should be disregarded. Counsel in his oral submission said this:-

> *"As to Articles, the Defendant is not entitled to three months to consider the request. The three-month window to notify a refusal does not provide three months to consider a request. If grounds for refusal do not exist, then the requirement to notify a refusal in three months does not apply."*

59.  Counsel said that this is not a private Company it is a publicly listed and traded Company. There is no discretion in these circumstances which pertain to the Plaintiffs' publicly listed

---

shares. Counsel noted that investors trading on the New York Stock Exchange could not have the certainty required were it to be otherwise.  Counsel said that the fact that the Defendant is a publicly listed company is important because there are certain regulatory requirements in the United States and clear descriptions of the rights of the holders of ADSs and the process by which these would be converted. Counsel drew to the Court's attention the Affidavit of Mr. Patner:-

> *"Description of Rights*
>
> *26.      Under the heading "Deposit, Withdrawal and Cancellation", the Description of Rights of Securities Registered under Section 12 of the Securities Exchange Act of 1934, included by reference as Exhibit 2.4 to the 2021 Annual Report (page 43 to 77 of Exhibit HP-1), provides as follows:*
>
> *"How do ADR holders cancel an ADS and obtain deposited securities?*
> *When you turn in your ADR certificate at the depositary's office, or when you provide proper instructions and documentation in the case of direct registration ADSs, the depositary will, upon payment of certain applicable fees, charges and taxes, deliver the underlying shares to you or upon your written order."* ***(page 64 of Exhibit HP-1)***

60.     Counsel said that there was no evidence before the Court from either side as to the usual timeframes for companies subject to regulation by the Securities Exchange Commission. If the Defendant's position is that it is two months, it should have filed evidence as to what its process was. It had not done so.

61.     In my view the point of some resonance made by Counsel for the Plaintiffs is that this timeframe as to the Articles was only raised at this Court hearing. It had not been raised at any time previously by the Defendant. If the review process by the Board was the cause of the delay and more importantly the Board was of the view that it had two or three months to respond, one would have expected that to have been communicated previously and certainly in response to the letters before action. I find it inexplicable that between the 21st July and 25th October 2022 in the face of the letters before action and the stream of follow up inquiries that the Defendant could not have provided a simple response that it believed that it had two or three

---

months to consider the request for conversion. I also find it questionable that the delay arose in respect of the Defendant only and not Fang.

62.    This is the background, what then of the proceedings themselves. How did the Defendant conduct itself against this background?

63.    Counsel for the Plaintiffs submits in summary that at every stage where the Defendant had the opportunity to simply issue the confirmation letters, it failed to do so. Counsel said that proceedings were served on the 2nd November 2022 at which point the Defendant changed attorneys. The Defendant then filed an acknowledgement of service indicating an intention to defend. This said Counsel was one of the most unreasonable things done when the Defendant must have known that it had no basis to defend the matter.

64.    On the 5th December 2022 after the deadline expired for evidence to be filed, the Defendant said that it did not intend to file any evidence. There were still no instructions given to register the shares.  Counsel said that in light of the Defendant's failure to honour its commitment given through previous attorneys in August 2022, the Plaintiffs were not able to accept from the Defendant that it would do on or before the 6th January 2023 what it had not previously done. In my view this is entirely understandable. In effect the Plaintiffs, though on stronger ground, were almost back in the position that they were in on the 5th August 2022.

65.    The Plaintiffs did not accept the reason given for further delay, which was the issue of Covid-19 restrictions in China based on the fact that the Defendant was continuing to correspond yet failing to issue the necessary instructions.

66.    Counsel said that the Defendant only acted in the face of an imminent Court hearing. This should have been done months ago, which would have entirely avoided unnecessary Court proceedings. Counsel said that it is not appropriate for a Defendant to contest proceedings without any basis to do so.  It is not appropriate for a Defendant to only take action when faced with a Court hearing where they cannot succeed.  Counsel also said that the attempt to contest the proceedings substantially increased costs.

67.    Counsel for the Defendant in reply to this aspect made careful and detailed submissions as to the timeframes from the start of the proceedings. Counsel's overarching point is that there have been no undue delays in the conduct of the proceedings. The Defendant instructed Counsel in a timely manner to consider the evidence and this was done within the agreed timetable and attended to the registration despite logistical difficulties in China. The Plaintiffs brought proceedings, the Defendant has acceded to the registrations, with the proceedings lasting a little over a month. The entire matter had been resolved within six weeks and thus within a reasonable time.

68.    Counsel said that the fact that registration took place does not justify an award of indemnity costs. The Defendant was entitled to consider the application and evidence before attending to the registration. The Defendant was entitled to take the time which had been agreed to consider the evidence and cannot be criticized for this and for the time which passed. At the end of this time the Defendant advised that it would attend to the registration and did so within six days.

69.    Counsel said that in fact the complaint began in earnest on the 19th September and not 13th July 2022 when Koa Capital sent a generic inquiry email. The registration which took place on 12th December 2022 was responsive to three requests made between September and October 2022 and was in each case well within the periods of three months and two months from the dates of the finalised IOTs.

70.    Counsel argued that the Plaintiffs cannot rely on the Defendant's use of Court ordered time as evidence of delay. The Defendant was entitled to use the time given to it to consider the application. Time was abridged so that the Defendant had only three full working days to file evidence. This was never going to be sufficient time for the Defendant to properly consider the application. Before the extension of time was granted the Defendant was not in a position to properly consider it. Its Board has a discretion which it must exercise in relation to share transfers.  The Defendant cannot be criticized for deciding not to file evidence and taking the Court ordered time to consider its position Counsel submitted:-

> *"It is unfair and unreasonable for the Plaintiffs to rely on an extension of time that the Plaintiffs agreed to in seeking indemnity costs against the Defendant. It is further unreasonable to rely upon a separate action involving separate facts (not before this Court) on unsatisfactory evidence as somehow grounding an indemnity costs order."*

---

*230420 KOA Capital L.P. & 507 Summit LLC v China Index Holdings Limited (CRJ) – FSD 235 of 2022 - Judgment*

Page 22 of 27

71.     Counsel described the approach of the Plaintiffs throughout as "*unnecessarily aggressive*".
        Counsel submitted that since the 9th November 2022 the Plaintiffs had protection by way of the
        undertakings, from the very thing they were concerned about.  Yet, despite the very broad and
        protective undertakings which were given they continued to press for a hearing. Counsel said
        that there is no suggestion that the Defendant has been anything less than fully responsive and
        engaged. Counsel said that there are practical issues which arise in dealing with a company that
        trades in China, distance, time zone, translations and the need for care. The issue of the effect
        of Covid- 19 restrictions was not something new. The Defendant had previously raised this on
        9th November 2022 in the Affidavit of Rachel Baxendale, which refers to Covid-19 restrictions
        in China and its effect on the Company's ability to respond. The letter stated:-

> "*Further our Client's record keeper who has knowledge of the matters and is vital in
> preparing any reply evidence has been in home quarantine in China and has only just
> been released.*"

72.     On 5th December 2022, the Defendant wrote suggesting that the proceedings should now fall
        away in light of the agreement to register the shares and offered to try to reach a settlement on
        costs to minimize further costs and delay. This was not accepted.

73.     Counsel said that nothing that had been done is outside the norm. The Defendant could have
        said that it had three months. No substantive defence was filed. There had been no time to look
        at the matter and at best the improper motives as to conduct suggested by the Plaintiffs are
        based on suspicion and there is no evidence of fact.

**DISCUSSION**

74.     I accept as Counsel for the Defendant submits in effect, that there should be caution in referring
        to and relying on the previous cases against the Defendant and Fang. These are different cases,
        the details of which are not fully available. The application against the Defendant is to be
        assessed on the basis of its conduct in respect of this particular case. Fang is of course an
        entirely separate entity from the Defendant.

---

*230420 KOA Capital L.P. & 507 Summit LLC v China Index Holdings Limited (CRJ) – FSD 235 of 2022 - Judgment*

75.     Yet even against this background it cannot be overlooked that the Defendant itself accepted that the previous case though separate and distinct raised the very same question of conversion of ADSs. That is evident from the Defendant's response on 5th August 2022. The Defendant accepted then that there were identified weaknesses in its procedures for such conversions. Significantly, the Defendant advised then that it was not aware of any unusual circumstances attendant upon the request of Koa Capital for conversion. The fact of the previous case and the nature of it goes to the knowledge of the Defendant about the general approach to such matters.

76.     It is therefore surprising that some four months later in December 2022 it is said that the Board of the Defendant had to properly consider whether the transfer was appropriate under Articles 43 and 44 and had three months to do so.

77.     The responsible persons were the same in the case of Fang and the Defendant. Koa Capital's shares in Fang were processed with some dispatch. The Plaintiffs could well be forgiven in light of this to question the difference in treatment. When the same persons acted for Fang and the Defendant and the Defendant's own attorneys had given assurances on the 5th August 2022, the Plaintiffs were not unreasonable in pressing for answers.

78.     In the case of **_Re Avendis Global Fund Ltd (in Official Liquidation)_** [14] Kawaley J. stated that where an application ought not to have been made at all, the costs of the entire application will logically be recoverable on an indemnity basis.[15] In my view this rationale is equally applicable to a circumstance where a party is forced into bringing an action because of the conduct of the other party, which action ought not to have been necessary.

79.     If the starting point is, as it must be in this case, that the Plaintiffs beginning with Koa Capital on the 21st July 2022 had a contractual right to the conversion and transfer which they were seeking to pursue, a right which the Defendant expressed respect for, then there ought to have been no need for an action to have been filed in the first place. According to Mr. Patner, Section 6 of the Deposit Agreement entitles the holder to surrender the ADR for the purpose of withdrawing the Shares represented by the ADSs. Upon surrender the holder is entitled to the delivery of the deposited securities, in this case, the shares.

---

[14] FSD 149 of 2010 (IKJ) Unreported. Grand Court 25th October 2022
[15] Ibid paragraph 44

80.     Counsel for the Plaintiffs submits, and I accept that:-

> *"This is not a case where the Defendant has advanced a case which was "unlikely to succeed", it is a case where the Defendant had no lawful basis, or even any non-fanciful argument, to justify its failure to give effect to the Plaintiffs' right to have their shares registered.  The Defendant failed to register the Plaintiffs' shares even after Conyers' letter of 5th August 2022, which stated that "Our client respects the rights of its shareholder [i.e. the right to convert ADS into ordinary shares] and will provide the necessary assistance to the exercise of their rights."*

81.     There were two letters before action, to neither of which the Defendant responded. The Defendant was warned about the possibility of indemnity costs should an action have to be filed. Against the background of what the Defendant knew and of what the Defendant's own attorneys had said on the 5th August 2022, to have filed an acknowledgement of service indicating an intention to defend was unreasonable.

82.     Should the Defendant's conduct be viewed as less unreasonable because no defence was filed? The filing of the Acknowledgement of Service kept the matter alive and increased costs when the only reasonable response should have been we apologise and will process in a specified time.

83.     The Defendant says that it acted reasonably because it acted quickly after the action was filed, that it needed and used the time agreed by consent and granted by the Court. The Defendant says that it cannot be criticised for this. The submissions of the Defendant on this aspect are divorced from the background and are made as if this was a matter newly brought to its attention in November 2022. The submissions are divorced from the reality that the Defendant knew on the 21st July 2022, the earliest date for the three tranches of shares, of the process which was being undertaken and accepted through its attorneys on the 5th August 2022, the shareholders rights which were being enforced.

84.     I do not see how causing by your conduct or negligence, another party to file an action which should have been completely unnecessary had you responded in a timely manner and or communicated reasons for delay can be anything but unreasonable to a high degree.

85.    To divide the facts and to say we provided you with what you asked for within quick time-frames *after* the action was filed is to ignore what was or must have been known to the Defendant beforehand. The fact that registration was effected without further issue does support the Plaintiffs' case that no proper basis existed for dispute, inquiry or delay.

86.    Counsel for the Plaintiffs made compelling submissions in which he identified eight specific acts or omissions by the Defendant in relation to the proceedings which either on their own or taken together were highly unreasonable and improper. I have discussed some of these above. The additional acts or omissions as detailed by Counsel are: -

"*c. Seeking an adjournment of the 9 November 2022 hearing for the express purposes of allowing it 28 days to prepare and file evidence to contest the proceedings when it knew that there was no basis upon which it could contest the proceedings.*

*d.    Waiting until 5 December 20922 to inform the Plaintiffs' that the Defendant would not be filing any evidence or contesting the proceedings and yet still not issuing the instruction to Maples FS to register the Plaintiffs' shares.*

*e.    Failing to issue the instruction to Maples FS to register the Plaintiffs' shares in response to Collas Crill's letter of 6 December 2022 so as to avoid the need to trouble the Court further as a result of a request for the matter to be re-listed for a hearing.*

*f.    Instructing Maples and Calder on 7 December 2022 to send a further letter [DHB2/4/51] explaining that the delay, which would potentially last until 6 January 2023, was the result of COVID restrictions in Beijing.  Such explanation was wholly incredible in circumstances where:*

*i.       if the Defendant could give instructions to Maples and Calder to send such a letter, it could have given instructions to Maples FS to register the Plaintiffs' shares; and*

---

*230420 KOA Capital L.P. & 507 Summit LLC v China Index Holdings Limited (CRJ) – FSD 235 of 2022 - Judgment*

    ii.    *the Defendant was able to give instructions to Maples FS 2 days later once the Court had confirmed a hearing date on a Friday night and the registration was completed by Monday morning.*

    g.    *Only finally giving the instruction to Maples FS to register the Plaintiffs' shares once the Court had confirmed a hearing date on 14 December 2022.*

    h.    *Failing to agree the consent order sent by Collas Crill on 12 December 2022, including an order that the Defendant pay the Plaintiffs' costs on an indemnity basis, so that the further costs of arguing about the basis of the costs order could be avoided."*

92.    I accept these submissions. I conclude that the Defendant's overall conduct in respect of these proceedings was highly unreasonable in light of what it knew or must have known. The Defendant should therefore pay the costs of the Plaintiffs (including for this hearing) to be taxed on an indemnity basis if not agreed.

**Dated this the 20th April 2023**

**The Honourable Justice Cheryll Richards K.C.**
**Judge of the Grand Court**

---

*230420 KOA Capital L.P. & 507 Summit LLC v China Index Holdings Limited (CRJ) – FSD 235 of 2022 - Judgment*

Page **27** of 27